# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

JEROME CARR,                    )
                               )
Plaintiff,                      )
                               )     NO. 3:07-CV-442
v.                              )
                               )
PATRICK METALS,                 )
                               )
Defendant.                      )

## <u>OPINION AND ORDER</u>

This matter is before the Court on: (1) Plaintiff's Motion for Summary Judgment, filed on July 9, 2008; and (2) Defendant's Motion for Summary Judgment, filed on August 4, 2008. For the reasons set forth below Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's federal claims are **DISMISSED with prejudice**. With no federal claims pending, this Court declines jurisdiction on Plaintiff's state law claims and, therefore, those state law claims are **DISMISSED without prejudice**. Because no claims remain pending, this case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.

<u>BACKGROUND</u>

Plaintiff, Jerome Carr ("Carr"), filed an employment

-1-

discrimination complaint against his employer, Defendant, Patrick Metals, alleging race discrimination, religious discrimination, and retaliation, all in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. section 2000 et seq., and 42 U.S.C. section 1981. Plaintiff also alleges state law claims of fraud, intentional infliction of emotional distress and conspiracy.

The parties have filed respective motions for summary judgment, each stating that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.


Motions for Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De*

*Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an

essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. Where the parties file cross-motions for summary judgment, the Court must consider each motion, but despite the parties' agreement that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

Plaintiff's Motion for Summary Judgment

In filing a motion for summary judgment, Carr has the burden to show that an absence of a genuine issue of material fact exists. This is done by providing the Court with evidence supporting those allegations. This evidence can include "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that support his position. *Celotex*, 477 U.S. at 323. Only then can a court determine whether summary judgment is appropriate.

On July 9, 2008, Carr filed a motion for summary judgment. In his motion, Carr describes how and why he believes Patrick Metals discriminated against him. The problem is that Carr does not provide any admissible evidence that supports his position. Plaintiff's failure to provide this evidence runs afoul of Local Rule 56.1(a) and, more fundamentally, deprives this Court of the

-4-

ability to determine what evidence Carr relies on to show that there is no genuine issue.

Not only has Carr failed to point out what specific evidence in the record he relies upon, but he has also failed to cite to any legal authority (i.e. case law) showing that he would be entitled to judgment as a matter of law even if he had evidence to support his claims. These failures necessitate the denial of Plaintiff's instant motion. *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992)("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied . . ..").

## Defendant's Motion for Summary Judgment

On August 4, 2008, Patrick Metals filed a motion for summary judgment. Contemporaneously, Patrick Metals filed a notice in the spirit of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), advising Carr of his obligation to respond to the pending motion for summary judgment, and specifically directing him to support his response with admissible evidence. (DE# 45).

### Facts

Patrick Metals, a division of Patrick Industries, is located in Mishawaka, Indiana, and manufactures structural aluminum for the recreational vehicle industry. (Goward Decl. ¶ 4). Production

employees at Patrick Metals are represented by the United Auto Workers, Local 428. (Goward Decl. ¶ 5). The terms and conditions of the relationship between Patrick Metals and the production employees are set out in a collective bargaining agreement ("CBA"). (Goward Decl. ¶ 5). Under Article IX of the CBA, a five-step procedure governs employee grievances. (Goward Decl., Ex. 1, pp. 9-10). Grievances that remain unsettled after having been process through the fourth step of the procedures may be submitted to binding arbitration, which is the fifth and final step. (Goward Dec., Ex. 1, pp. 9-10). These grievance and arbitration provisions of the CBA are an exclusive remedy. (Goward Decl., Ex. 1, p. 10).

Jerome Carr worked for Patrick Metals as a general laborer beginning on March 31, 2003. (Carr Dep., pg 58). In that position, Carr worked primarily as a packer, preparing materials to be packed and shipped. (Carr Dep., pg 58). In early 2004, Carr was elected by the production workers to serve as the head of the bargaining unit committee, acting as the Union Chair for the workers. (Goward Decl. ¶ 7). Carr served in that position until October 2006. (Goward Decl. ¶ 7).

In late 2005 Carr bid on and was transferred to a position working as a Computer Navigated Console ("CNC") Operator. (Carr Dep. Pg. 59 lines 13-19). As a CNC Operator, Carr was responsible for milling metal by calibrating and programming the CNC machine to make the appropriate cut and then cycling the machine. (Carr Dep.

pp. 64-65). Carr received two to four weeks of on-the-job training from supervisor, Chandler DeCesare, ("DeCesare") on operating the CNC machine. (Goward Decl. ¶ 10). In January 2006, Carr took and passed the exam to become an official CNC Operator. (Goward Decl. ¶ 10).

When Carr officially became a CNC Operator his pay was supposed to rise from $11.45 per hour to $13.30 per hour. (Goward Dec. ¶ 11). In February 2006, Carr filed a grievance notifying Patrick Metals that his earnings statements did not indicate the increase in his pay rate and alleged racial discrimination because the two other CNC operators, both of whom are Caucasian, were paid the correct wage. (Goward Decl. ¶ 12). On February 27, 2006, Patrick Metals acknowledged that it mistakenly paid Carr incorrectly, adjusted Carr's pay rate, and provided back pay for the amount that Carr was underpaid. (Goward Decl. ¶ 13; Carr Dep. pp. 72, 193). Once Carr received the back pay he did not purse the grievance any further. (Goward Decl. ¶ 13).

On May 3, 2006 Carr was running a part on the CNC machine that required him to manually turn a part at each of the three different steps of the milling process. (Goward Decl. ¶ 14). Carr did not move the part at the appropriate time in the three step sequence and, as a consequence, when Carr cycled the machine the machine hit the part, broke the tool and came to an emergency stop. (Carr Dep. pp. 80-81). Pursuant to company policy, Patrick Metals

investigated the incident to determine why the tool broke and whether operator negligence was responsible. (Goward Decl. ¶ 15). Patrick Metals came to the conclusion that Carr's carelessness was the cause of the tool breaking, and Carr was given a written warning. (Goward Decl. at ¶ 16).

On May 6, 2006, Carr filed a grievance to challenge the warning, alleging that he was discriminated against. (Goward Decl. at ¶ 17). Carr alleged that two Caucasian workers- Frank Rozum and Lance Lanning- were not disciplined when they caused similar damage while operating the same machinery. (Goward Decl. ¶ 17). Rozum and Lanning both received written warnings from Patrick Metals for their carelessness. (Goward Decl. ¶18).

On May 9, 2006 Carr's grievance was reviewed and denied because Carr had been trained to operate the CNC machine and his carelessness had caused the accident. (Goward Decl. ¶ 19). Carr did not appeal the denial of this grievance through all the steps of the grievance procedure. (Goward Decl. ¶ 19). After the written warning was issued, Carr informed Patrick Metals that he wished to go back to his previous job as a general laborer. (Carr Dep. pp. 156-57). Patrick Metals transferred Carr back to his old job and adjusted his pay accordingly. (Goward Decl. ¶ 20).

On June 19, 2006, Carr filed a charge of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, with the Equal Employment Opportunity Commission ("EEOC"). (Goward

Decl. ¶ 21). In this charge, Carr alleged racial discrimination and retaliation and that the earliest date of discrimination took place on December 1, 2005. (Goward Decl. ¶ 22).

On September 12, 2006 one of Carr's co-workers, Amanda Hickey, ("Hickey") reported to Patrick Metals that she and at least one other employee, Josh Cole, ("Cole") had observed Carr making sexually inappropriate and vulgar comments in the workplace. (Goward Decl. ¶ 24). Patrick Metals investigated the issue and, in doing so, asked for statements from Carr, Hickey, and Cole. (Goward Decl. ¶ 25). Hickey and Cole reported that Carr was upset, shouted profanities and made a sexually explicit comment. (Goward Decl. ¶ 26). Carr acknowledged that he "snapped and began cursing" and "the language was indeed foul." (Goward Decl. ¶ 27). In addition to getting his written statement, Patrick Metals allowed Carr to explain what happened and respond to the allegations. (Goward Decl. ¶ 27).

On September 21, 2006, Carr filed a grievance relating to the complaint made against him by his co-workers. (Goward Decl. ¶ 28). In his grievance, Carr stated that the allegations were without merit because he was not directing his language at anyone in particular and because everyone in the factory uses explicit adult language. (Goward Decl. ¶ 28). Based upon its investigation, Patrick Metals denied Carr's grievance and issued him a warning for the use of his language in the presence of other workers. (Goward

Dec. ¶ 29). This type of violation typically results a five-day suspension, but Patrick Metals waived the harsher penalty because of the time that had passed from the incident to when the penalty was actually issued. (Goward Decl. at ¶ 30).

On October 26, 2006, Carr filed another grievance challenging the warning he received and claimed that the warning violated his civil and contractual rights and amounted to nothing more than Patrick Metals trying to "weed him out." (Goward Decl. at ¶ 31). The grievance was denied and Carr did not appeal through all the steps of the grievance procedure. (Goward Decl. at ¶ 32).

On September 15, 2006, while Carr was operating a forklift, he ran over a piece of wood, lost the load he was carrying, and injured another employee. (Goward Decl. ¶ 33). Patrick Metals issued Carr a written warning for failing to pay sufficient attention while operating a forklift. (Goward Decl. ¶ 34). It is Patrick Metals' policy to have employees involved in workplace accidents to undergo alcohol and drug testing. (Goward Decl. ¶ 35; Carr Dep. p. 93). Pursuant to that policy, Patrick Metals had Carr take this type of test due to the forklift accident. (Goward Dec. ¶ 36). Carr's examination results came back for a positive test of Oxazepan, a benzodiazepine. (Goward Decl. ¶ 36; Carr Dep. pp. 94-95). Based on the positive drug screen and notice from Osolo Medical Clinic that none of the drugs Carr acknowledged that he was prescribed would test positive for benzodiazepines, Patrick Metals

suspended Carr until they could determine if this test result showed Carr was in violation of company policy. (Goward Decl. ¶ 37). Patrick Metals asked Carr for documentation of any prescription for benzodiazepines. (Goward Decl. ¶ 37; Carr Dep. pg. 98).

On September 21, 2006, Carr filed another grievance challenging the suspension and asked a copy of the urine analysis report. (Goward Decl. ¶ 38). Patrick Metals gave Carr a copy of the report. (Goward Decl. ¶ 38). Patrick Metals reviewed and denied Carr's grievance and also denied the requested back pay for the days he had been suspended. (Goward Decl. ¶ 38). Carr again did not appeal the denial of the grievance through all the steps of the grievance process. (Goward Decl. ¶ 38).

On or about September 27, 2006, Carr's physician notified Patrick Metals that Carr had a prescription for a benzodiazepine to help him sleep. (Goward Decl. ¶ 38; Carr Dep. p. 99). Patrick Metals' drug policy requires "[e]mployees undergoing medical treatment with a legally-obtained prescriptive drug/controlled substance which may alter their physical or mental ability [to] report this fact to their supervisor." (Goward Decl. ¶ 40). Carr had not initially informed Patrick Metals that he had a prescription for a benzodiazepine, but when Patrick Metals was informed of the prescription it allowed Carr to return to work, and paid him back pay for the days he had been suspended. (Goward Decl.

¶¶ 40-41). However, Carr was notified that he would not be eligible to operate a forklift without physician approval. (Goward Decl. ¶ 41).

On October 24, 2006, Carr sent Patrick Metals a letter stating that he thought the urine specimen which was used to test for illegal drugs was either tampered with or that another urine specimen was switched with his. (Goward Decl. at ¶ 42). On November 9, 2007, Carr voluntarily resigned from employment with Patrick Metals. (Goward Decl. ¶ 42; Carr Dep. p. 108).

DISCUSSION

Carr claims that Patrick Metals discriminated and retaliated against him based on his race, his religion, and his union activities. Carr also alleges that Patrick Metals violated the CBA. Finally, Carr alleges Patrick Metals conspired with Osolo Medical Clinic to terminate his employment by tampering with or switching Carr's urine sample obtained on September 15, 2006, that Patrick Metals fraudulently represented the results of his drug screen and that Patrick Metals intentionally inflicted emotional distress by suspending Carr pending and investigation of his positive drug screen. Each of these claims will be addressed in turn.

Patrick Metals' alleged
<u>breach of collective bargaining agreement</u>

Carr argues- albeit vaguely- that Patrick Metals unlawfully attempted to terminate his employment in violation of the current CBA. Section 301 of the Labor Management Relation Act ("LMRA"), 29 U.S.C. section 185, governs any claim that Carr has made regarding the breach of the CBA. Section 301 requires the application of uniform federal law to resolve disputes regarding collective bargaining agreements. Section 301 preempts any related state law claims. *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23 (1983). When a claim is brought pursuant to a CBA, the plaintiff must first have exhausted the grievance process contained within that CBA, unless the union in arguing for the plaintiff breached its duty of loyalty. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983). There is no argument that the union breached its duty of loyalty here.

Patrick Metals claims that Carr is precluded from brining any claims pursuant to the CBA because he failed to proceed through the entire five step grievance process. Carr argues that he would have used the grievance process, but that Patrick Metals was delaying the process. Despite Carr's arguments, Section 301 of the LMRA requires him to exhaust any arbitration process before bringing this claim in federal court against Patrick Metals. Carr's argument that he would have exhausted the arbitration process if

not for Patrick Metals' delay is not persuasive.  First, Carr gives no evidence that Patrick Metals delayed their actions and violated the grievance process.  Ultimately, though, Carr did not exhaust the five step grievance procedure and, therefore, any claim he has made stemming from the CBA must be dismissed.

### Carr's Race Discrimination Claim Fails[1]

Carr alleges that he was discriminated on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5, and in violation of his equal rights under the law, 42 U.S.C. § 1981.  Because Title VII and 1981 claims are analyzed in the same manner, these claims will be addressed simultaneously.  *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 337-38 (7th Cir. 2002).

There are two ways a race discrimination claim can be proven.  There is a direct and an indirect method. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938 (7th Cir. 2003).  Carr does not indicate which method he is proceeding under.  Thus, in an abundance of caution, the Court will examine both methods.

---

[1]Carr also claims that Patrick Metals discriminated against him by disciplining him for law work production.  However, the two times Carr was disciplined for low work production occurred more than 300 days before the filing of Carr's EEOC charge.  See Def. Stmt Mat. Facts ¶¶ 22, 23, 44.  As a result, these claims are untimely and will not be addressed further.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-1111 (2002).

The direct method

Under the direct method a plaintiff must "show either through direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose." (*Id*. at 938-939).  Direct evidence quite possibly can only be categorized as an admission of discriminatory intent by either the defendant or his agents. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).  Carr has not alleged any direct evidence of discrimination (i.e. being told that he was being discriminated against based on his race).

Nevertheless, Carr could still proceed under the direct method if he provided a "circumstantial mosaic" demonstrating discriminatory intent.  *Id*.  This type of evidence can include: 1) suspicious timing, ambiguous statements, behavior towards other members of the protected group, or other small pieces that one could infer discriminatory intent from, 2) evidence that similarly situated employees, who are not part of the protected group that the plaintiff is a part of, receive systematically better treatment from the employer, or 3) the plaintiff was qualified for a job but they were passed over for an employee who is not part of the protected group and the reason the employer gave for hiring the difference in treatment is mere pretext for discrimination.  *Id*. Notably, this circumstantial evidence must directly point to a discriminatory reason for an employer's action. *Adams v. Wal-Mart*

*Stores, Inc.*, 324 F.3d 935 at 939. In other words the circumstantial evidence must have a causal link to the discrimination such as the decision to punish the plaintiff came from this discrimination. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003). Upon review of the record, there has been no such evidence or arguments presented here. Instead, Carr's arguments are more appropriately analyzed under the indirect method.

### The indirect method

When using the indirect method a plaintiff must first make a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do this, the plaintiff must show that 1) he belongs to a protected class 2) he was meeting his employer's legitimate performance expectations 3) he suffered an adverse employment action and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff is able to make out a prima facie case the burden then shifts to the defendant to make a legitimate, nondiscriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. 792 at 802. If the defendant meets this burden then the plaintiff is afforded a chance to show that the

defendant's nondiscriminatory reason is mere pretext for discrimination. *Id.* at 804. To show pretext the plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence." *Fane*, 480 F.3d 534 at 541. While the burden does shift between the plaintiff and the defendant, the ultimate burden of persuasion is always with the plaintiff. *Id.* at 538.

Carr alleges he was discriminated in a number of ways, each will be addressed below.

### 1) Patrick Metals initially paid Carr less than white CNC operators

Carr's first complaint is that when he initially became a CNC operator, Patrick Metals paid him less than other white CNC operators. Patrick Metals acknowledges that it initially paid Carr less than they should have. Patrick Metals claims the underpayment was a mistake and made Carr whole after the issue was brought to their attention.

Arguably, Carr can make a prima facie case on this claim. He is in a protected class, he had fulfilled his employer's reasonable expectations by passing the examination to be an entry level CNC Operator, he suffered adverse employment action taken against him because he was being paid less than he was supposed to be paid, and similar employees who were not part of his protected class were

being paid the appropriate amount.

Since Carr can make a prima facie case, the burden goes to Patrick Metals to give a nondiscriminatory reason for the action. Patrick Metals argues that the lack of a pay raise was a simple error that they corrected when they were informed of it. The burden against Patrick Metals is one of production not of persuasion and as such this reason is enough to move to the next part of the *McDonnell Douglas* test. *McDonnell Douglas*, 411 U.S. at 802-803.

As Patrick Metals has given a nondiscriminatory reason-mistake - the burden is on Carr to show that the Patrick Metal's reason is a mere pretext for discrimination. *Fane*, 480 F.3d 534 at 541. Carr cannot meet this burden. Carr has not identified such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence. Carr claims that this reason is pretext because Plaintiff went into the grievance process before Defendant paid Plaintiff the proper amount, and because it took Patrick Metals two months to correct the mistake. (Plaintiff's Response to Defendant's Motion for Summary Judgment Pg. 5 ¶ 2). This allegation does not pass the requirement of showing that the Patrick Metal's reason is mere pretext. *See Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006)(holding that evidence that an employer made a mistake or that the decision was ill-advised cannot meet the burden to show pretext; an employer's explanation is pretext for

discrimination only if it is a lie). There is nothing in the record to contradict Patrick Metals' reason for the disparity in pay- a mistake. Therefore, Carr is unable to show Patrick Metals' proffered reason is pretextual. For this reason Carr's claim in regards to discrimination on basis of pay must fail.

2) <u>Patrick Metals disciplines Carr for Breaking Tool</u>

Carr also makes claims that the discipline he received for breaking a tool while being a CNC Operator was discriminatory. Carr claims that 1) he was not given the proper training while white CNC Operators were; and 2) he was disciplined for breaking a tool when white operators who did similar acts and they were not disciplined. Patrick Metals argues that Carr did receive the proper training and that Carr cannot prove that the disciplinary actions taken against him were discriminatory.

Patrick Metals is correct that Carr cannot make a prima facie case of race discrimination on this claim. To start, Carr cannot prove that he was fulfilling his employer's reasonable expectations. Remember, Carr was disciplined for his negligence that caused a tool to be broken. Notably, Carr admits his negligence was what caused the tool to break. (Carr Dep. pp. 80-81). Moreover, there was nothing unusual about the discipline he received; Carr was disciplined as the regulations in the Employee Handbook required. (Goward Decl. ¶ 16). That type of discipline is

appropriate for not meeting the employer's standards of what Carr must do, in this case to not break the tool.

Also fatal to Carr's claim is that he cannot show that he was subject to an adverse employment action. Adverse employment actions are typically economic injuries such as dismissal, suspension, failure to promote, or diminution in pay. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Furthermore, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996). Not all unpleasantness results in an adverse action. *Twisdale v. Snow*, 325 F.3d 950, 953 (7th Cir. 2003). The complained of disciplinary action was a written warning. (Goward Decl. ¶ 16). The warning did not result in, and was not accompanied by, any tangible job consequence. As a result, the written warning does not amount to the level needed to show that an adverse employment activity has occurred. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001).

Despite his allegations that two white CNC operators were not disciplined for similar act, Carr has failed to show that the other similarly situated employees were treated more favorably. A similarly situated employee is one who is directly comparable in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d

676, 680 (7th Cir. 2002). To see if one is similarly situated the court looks to see if employees dealt with the same supervisor, were subject to the same standards, and if they had the same experience, education, and qualifications. *Id*. The Court must also look to see that the employees are similar in respect to performance and conduct. *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002).

Carr gives no evidence that the other operators had the same supervisor. Having the same supervisor is important because different supervisors can result in a disparate application of and adherence to policies. *Id*. A different supervisor might enforce disciplinary actions differently thus making a disparate application of and adherence to company policies, and that is enough to make someone not similarly situated to Carr.

Plaintiff also fails to provide evidence that the violations done by these white employees were similar to Carr's violation. Finally, Patrick Metals has shown that the employees that Carr alleges were not disciplined were in fact disciplined. (Exhibit 6 to Goward Decl.) Thus, Carr has failed in meeting his burden of providing a similarly situated employee who was treated more favorably.

In regards to the training, Carr argues that he did not receive the same training that two white CNC Operators received and that the discipline against him for breaking the tool was

discriminatory because the Patrick Metals never trained him. To the contrary, Patrick Metals argues that Carr did receive training.

Again, Carr does not explain how the two white CNC Operators he discusses were similarly situated to himself. Carr does not give evidence that the employees were under the same supervisor nor does he give evidence on how those employees were trained. Patrick Metals, on the other hand, provided evidence that Carr was given on the job training by his supervisor DeCesare. (Goward Decl. ¶10). Patrick Metals also has shown that Carr passed the CNC Operator entry level exam. (*Id.*) The fact that Carr can give no evidence to show a disparity in the training coupled with the fact that he passed the examination to be certified makes it difficult to believe that he was given lesser training. Even if the Court were to assume that the white CNC Operators were similarly situated, the fact that Carr passed the examination shows that he did in fact receive the training he was required to receive.

Ultimately, Carr cannot show how he met his employer's reasonable expectations, he has not shown how he experienced an adverse employment action, and he has not shown how similarly situated employees, who are not part of his protected class, were treated more favorably. For these reasons the claim regarding the discipline against Carr for breaking the tool while operating the CNC must fail.

3) <u>Patrick Metals' discipline of Carr for sexual harassment</u>

Carr also makes an argument that Patrick Metals discriminated against him when they disciplined him for the sexual harassment charges for his foul language in the workplace. Carr argues that he was not directing this language at anyone and that it was discrimination to hold him accountable. Carr further claims that it was discrimination for Patrick Metals to rely on the two statements it did, while not getting the statement of an employee who Carr said would give a statement favorable to him.

To show discrimination, Carr must once again try to make out a prima facie case. In doing this, Plaintiff must meet the employer's reasonable expectations to interact with his subordinates, peers, and supervisors. *Herron*, 388 F.3d at 300. Carr did not meet this burden when he admittedly used foul language in the presence of co-workers. (Goward Decl. ¶ 27). Patrick Metals had made it clear that there shall be no immoral or indecent behavior while on company property. (Exhibit 4 to Goward Decl. Pg. 11). The mere fact that Carr may not have directed the language is seemingly inconsequential. Thus, Carr cannot make out a prima facie case that he was meeting Patrick Metals' legitimate expectations.

Nevertheless, to go on, Carr must also show that he had an adverse employment action taken against him, which he cannot do. Carr should have received a five (5) day suspension for his

actions, but Patrick Metals waived this suspension. (Goward Decl.
¶ 30). As a result, Carr had nothing more than a "bruised ego" in
this case, and that does not meet the test of an adverse action.
*Smart,* 89 F.3d at 441.

Finally, Carr would have to point to a similarly situated
employee who is not part of the his protected class who was treated
more favorably. To be similarly situated they have the same
supervisor, the same standard, and had the same experience.
*Patterson*, 281 F.3d at 680. Carr did not do this. Carr does not
point to anyone - much less a similarly situated person- who has
gone through the process and Carr has not attempted to pass this
requirement to make a prima facie case.

At the end of the day, Carr has not made a prima facie case of
race discrimination against Patrick Metals. For this reason,
Carr's race discrimination claim regarding the disciplinary actions
taken against Plaintiff for his use of foul language must fail.


    4)   Patrick Metals' suspension of
           <u>Carr as a result of drug test</u>

Finally, Carr makes a claim against Patrick Metals for the
action of suspending him as the result of a drug test. Looking
again to the prima facie case, this Court finds Carr did not meet
all of his employer's reasonable expectations. He did not inform
Patrick Metals that he was taking Temazepam, (Carr Dep. Pg. 96),
which he was required to do. (Goward Decl. ¶ 40). The discipline

resulted from a drug test that had identified trace elements of a benzodiazepine, which is the family of drugs that Temazepam is from. (*Id*. at ¶¶ 40-41).

Carr also fails to show a person similarly situated was treated any better. As stated before, a person who is similarly situated is one who is directly comparable in all material respects, they have the same supervisor, the same standard, and had the same experience. *Patterson*, 281 F.3d at 680. Carr does not point to one person who is not in his protected class who had an accident, had a drug test, had the drug test come out positive, and not be suspended. Without this showing, Carr did not even attempt to make a prima facie case against Patrick Metals for discrimination for the drug test. For this reason, the claim of race discrimination over the situation of the drug test and following suspension must fail.

As a result, the Court must grant Defendant's Motion for Summary Judgment in regards to the race discrimination claims.

<u>Carr's Religious Discrimination Claim Fails</u>

The Court must dismiss any religious discrimination claim because Carr is not pursuing the claim here. (Carr Dep. pp. 187-88). This comes as little surprise, because he did not any allege any religious discrimination in his EEOC charge, (Goward Dec., Ex. 7), which is a prerequisite to allege them here. *Peters v.*

*Renaissance Hotel Operating Co.*, 307 F.3d 535, 551 (7th Cir. 2002).

<u>Carr's Retaliation Claim Fails</u>

Carr marked the box "retaliation" in his EEOC charge. However, the particulars in that charge are devoid of any facts explaining the reasons why he believed that he was retaliated against. In addition, Carr has not specifically alleged retaliation in any specific situation within his complaint. For the sake of thoroughness, the Court will assume Carr is alleging retaliation for all the claims he has made.

Title VII prohibits an employer from discriminating against an employee because that employee has "opposed any practice made an unlawful employment practice … or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. 2000e-3(a) (2008). Like race discrimination, retaliation may be proven by either a direct or an indirect method. *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902 (7th Cir. 2006). The direct method requires the plaintiff to present direct evidence that he engaged in protected activity and as a result suffered the adverse employment which the complaint is centered upon. *Id*. Direct evidence consists of an admission that retaliation was the reason for the adverse employment action. *Rodrick v. Saint Joseph College*, No. 2:05-CV-274, 2008 WL 1925072 at *7 (N.D. Ind. April

30, 2008). Circumstantial evidence is evidence that allows a jury to infer the illegal motivation of the defendant. *Id*. When defining direct evidence it must be noted that "the direct method does not utilize the specific circumstantial evidence that the plaintiff presents when he uses the indirect method of establishing discrimination. But if he can prove by means of circumstantial evidence "that he engaged in protected activity and as a result suffered the adverse employment action of which he complains, that is fine." *Sylvester*, 453 F.3d at 902.

The indirect method is a slight modification of the traditional *McDonnell Douglas* test. The plaintiff is required to show that 1) he engaged in statutorily protected activity; 2) he was performing his job according to his employer's legitimate expectations; 3) despite his satisfactory performance, he suffered an adverse employment action; and 4) he was treated less favorably than similarly situated employees who did not engage in such protected activity. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the plaintiff makes a prima facie case by passing the requirement set forth then the defendant can present a nondiscriminatory reason. If defendant does produce a nondiscriminatory reason then the plaintiff must show that the reason is mere pretext for the retaliation. *Id*.

Carr has not brought forth any direct evidence or enough circumstantial evidence to succeed on this claim under the direct

method. As previously discussed above, he has not submitted anything tantamount to an admission from Patrick Metals that its acts were retaliation for Carr's engaging in any protected activity. Similarly, Carr cannot create a strong enough case to create a "convincing mosaic of circumstantial evidence," and withstand a motion for summary judgment. *Sylvester*, 453 F.3d at 903.

Neither can Carr meet the standards set out in the indirect method. The material facts set forth in the race discrimination section above are equally applicable in the current context. From those facts, it is clear that his retaliation claim fails. The Court has already dealt with the elements of the indirect test; because the elements for retaliation are virtually identical the Court will not rehash why Carr has failed to meet his burden.

Carr also alleges that the acts of Patrick Metals were in retaliation for the grievances he had filed against Patrick Metals on behalf of member of the union. (Plaintiff's response to Defendant's Motion for Summary Judgment Pg. 7 ¶2). Patrick Metals claims that if the retaliation was truly for this reason, then Carr's claim would fall under a violation of the National Labor Relations Act ("NLRA"). The NLRA states that it is an unfair labor practice of an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter". 29 U.S.C. §158(a)(4) (2008). When there is

a claim of an unfair labor practice then the court must yield to the judgment of the National Labor Relations Board ("NLRB"). *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-245 (1959). Thus, generally the NLRA preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act. *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge*, 403 U.S. 274, 287 (1971). Congress has made this preemption so that there would be universal application of its substantive rules and to avoid conflicts that would inevitably form due to the different procedures and attitudes different courts would take toward labor controversies. *Id.*

Carr is basing his claim under the NLRA, but he has produced no evidence that he has taken his charge to the NLRB, which he must do. As a result, this Court cannot hear this claim.


Carr's State Law Claims

Carr asserts state law claims of conspiracy, fraud and intentional infliction of emotional distress. As all of his federal claims have been dismissed, this Court declines supplemental jurisdiction over Carr's remaining state law claims. *Cady v. South Suburban College*, 152 Fed. Appx. 531, 534 (7th Cir. 2005); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Accordingly, Carr's state law claims are dismissed without

prejudice.

<u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's federal claims are **DISMISSED with prejudice.** With no federal claims pending, this Court declines jurisdiction on Plaintiff's state law claims and, therefore, those state law claims are **DISMISSED without prejudice.** Because no claims remain pending, this case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.

**DATED:  February 24, 2009**          **/s/RUDY LOZANO, Judge**
                                       **United States District Court**